**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone:    (212) 589-4200
Facsimile:    (212) 589-4201
David J. Sheehan
Mark A. Kornfeld
Thomas L. Long
Marc E. Hirschfield
Keith R. Murphy
Jessie M. Gabriel
Melissa L. Kosack

*Attorneys for Irving H. Picard, Trustee for
the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff
Investment Securities LLC and Bernard L.
Madoff*

**Hearing Date:  June 7, 2011 at 10:00 a.m.**
**Objection Deadline:  May 26, 2011**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor.<br>----------------------------------------------------------------<br>IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>Defendants. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated)<br><br><br><br>Adv. Pro. No. 09-1239 (BRL) |

300156021.7

**MOTION FOR ENTRY OF ORDER PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND RULES 2002(a)(3) AND 9019(a)
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
APPROVING AN AGREEMENT BY AND BETWEEN
THE TRUSTEE AND KENNETH KRYS AND JOANNA LAU, SOLELY IN THEIR
RESPECTIVE CAPACITIES AS THE FOREIGN REPRESENTATIVES FOR AND
JOINT LIQUIDATORS OF FAIRFIELD SENTRY LIMITED,
FAIRFIELD SIGMA LIMITED, AND FAIRFIELD LAMBDA LIMITED**

TO:     THE HONORABLE BURTON R. LIFLAND
        UNITED STATES BANKRUPTCY JUDGE,

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff," and together with BLMIS, the "Debtors"), by and through his undersigned counsel, submits this motion (the "Motion") seeking entry of an order, pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving an agreement (the "Agreement")[1] by and among the Trustee and Kenneth Krys and Joanna Lau (together with their predecessors, the "Liquidators" or the "Joint Liquidators"), solely in their respective capacities as the Foreign Representatives for, and Joint Liquidators of, Fairfield Sentry Limited, a British Virgin Islands company ("Fairfield Sentry"), Fairfield Sigma Limited, a British Virgin Islands company ("Fairfield Sigma"), and Fairfield Lambda Limited, a British Virgin Islands company ("Fairfield Lambda" and, together with Fairfield Sentry and Fairfield Sigma, the "Fairfield Funds"), and, in support of the Motion, the Trustee respectfully represents as follows:

---

[1]     The form of Agreement is annexed hereto as Exhibit "A."

## PRELIMINARY STATEMENT

Fairfield Sentry was the largest BLMIS Feeder Fund[2] and one of the largest BLMIS customers. Fairfield Sigma and Fairfield Lambda were separate funds whose sole purpose was to invest all of their funds in Fairfield Sentry. The Fairfield Funds are currently in liquidation in the British Virgin Islands. All three funds were named as defendants, along with other entities and persons, in the present adversary proceeding. The Trustee and the Fairfield Funds Joint Liquidators have agreed to settle the Trustee's claims against the Fairfield Funds on terms set forth in the Agreement. Under the Agreement judgments will be entered against Fairfield Sentry in the amount of Three Billion Fifty Four Million Dollars ($3,054,000,000); against Fairfield Sigma in the amount of Seven Hundred Fifty Two Million Three Hundred Thousand Dollars ($752,300,000); and against Fairfield Lambda in the amount of Fifty Two Million Nine Hundred Thousand Dollars ($52,900,000). These judgments are the largest entered to date against any BLMIS Feeder Fund. In addition, Fairfield Sentry will pay Seventy Million Dollars ($70,000,000) to the BLMIS Fund of Customer Property. The Agreement also incorporates a cooperative approach to pursue legal claims against entities or persons which redeemed Fairfield Fund shares. Finally, Fairfield Sentry's customer claim is reduced by nearly One Billion Dollars ($1,000,000,000).

The Agreement represents a good faith, complete, and total compromise between the Trustee and the Liquidators as to any and all claims the Trustee asserted against the Fairfield Funds for avoidable initial and recoverable initial and subsequent transfers by BLMIS

---

[2]    BLMIS Feeder Funds were investment vehicles, which invested assets with BLMIS via direct customer accounts with BLMIS's investment advisory business (the "IA Business").

300156021.7

within the ninety days before the Filing Date and during the period greater than ninety days, but within six years before the Filing Date, and other claims the Trustee had asserted against the Fairfield Funds. The Agreement will greatly benefit victims of the Madoff Ponzi scheme and the total and percentage allocation of the Fund of Customer Property. The Trustee respectfully requests the Court approve the Agreement.

## BACKGROUND AND RELEVANT PROCEDURAL HISTORY IN THIS AND IN RELATED PROCEEDINGS

1.      On December 11, 2008 (the "Filing Date"),[3] the Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York (the "District Court") against the Debtors (Case No. 08 CV 10791). The complaint alleged that the Debtors engaged in fraud through the investment advisor activities of BLMIS.

2.      On December 15, 2008, pursuant to section 78eee(a)(4)(A) of SIPA, the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to section 78eee(a)(3) of SIPA, SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by SIPA.

3.      On that date, the District Court entered the Protective Decree, to which BLMIS consented, which, in pertinent part:

(i)      appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

---

[3]      In this case, the Filing Date is the date on which the Securities and Exchange Commission commenced its suit against BLMIS, December 11, 2008, which resulted in the appointment of a receiver for the firm. *See* Section 78*lll*(7)(B) of SIPA.

4

(ii)     appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and

(iii)    removed the case to this Court pursuant to section 78eee(b)(4) of SIPA.

4.      At a plea hearing (the "Plea Hearing") on March 12, 2009 in the criminal action filed against him by the United States Attorney's Office for the Southern District of New York, Madoff pled guilty to an 11-count criminal information, which counts included securities fraud, money laundering, theft and embezzlement. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) On June 29, 2009, Madoff was sentenced to a term of imprisonment of 150 years.

5.      On April 13, 2009, an involuntary bankruptcy petition was filed against Madoff. On June 9, 2009, this Court entered an order substantively consolidating the Chapter 7 estate of Madoff into the BLMIS SIPA proceeding.

## THE TRUSTEE'S CLAIMS AGAINST THE FAIRFIELD FUNDS

6.      Fairfield Sentry was a customer of BLMIS and maintained four direct customer accounts with BLMIS, Accounts 1FN012, 1FN045, 1FN069, 1FN070 with BLMIS commencing in or about 1990 (the "Fairfield Sentry Accounts"). The Fairfield Sentry Accounts are listed on Attachment A to the Agreement.

7.      On or about May 18, 2009, the Trustee commenced an adversary proceeding against Fairfield Sentry, Fairfield Sigma, Fairfield Lambda, and other defendants in the Bankruptcy Court under the caption *Picard v. Fairfield Sentry Ltd. et al.*, Adv. Pro. No. 09-01239 (BRL), as later amended on July 20, 2010 (the "Adversary Proceeding"). In the Adversary Proceeding, the Trustee asserts that the Fairfield Funds are liable to the BLMIS Estate under sections 544, 547, 548, 550 of the Bankruptcy Code, SIPA § 78fff-2(c)(3) and

300156021.7

the New York Fraudulent Conveyance Act (New York Debtor and Creditor Law §§ 270-281) for the withdrawals made by Fairfield Sentry from BLMIS, of One Billion One Hundred Thirty Thousand Dollars ($1,130,000,000) from the Fairfield Sentry Accounts within ninety days before the Filing Date ("90 Day Withdrawals") and an additional One Billion, Nine Hundred Twenty Four Million Dollars ($1,924,000,000) from the Fairfield Sentry Accounts, during the period more than 90 days, but within six years, before the Filing Date (the "Pre 90-Day Withdrawals" and, together with the 90 Day Withdrawals, the "Withdrawals"), and Fairfield Sentry's subsequent transfer of approximately Seven Hundred Fifty Two Million Three Hundred Thousand Dollars ($752,300,000) of the Withdrawals to Fairfield Sigma and Fifty Two Million Nine Hundred Thousand Dollars ($52,900,000) of the Withdrawals to Fairfield Lambda, (collectively, the "Transfers"). Specifically, the Trustee seeks, <u>inter alia</u>, recovery from the Fairfield Funds of an amount totaling Three Billion Fifty Four Million Dollars ($3,054,000,000). The Trustee also has asserted claims for turnover and accounting of the Withdrawals, and for disallowance of the claims filed by the Fairfield Funds.

8.    All claims of the Trustee against the Fairfield Funds under sections 544, 547, 548 or 550 of the Bankruptcy Code, applicable provisions of SIPA, including 78fff-2(c)(3), and the New York Debtor and Creditor Law §§ 270-281 shall be referred to herein as the "Avoiding Power Claims."

9.    The Trustee believes that all of the initial Transfers described in the Adversary Proceeding are avoidable and the subsequent transfers are recoverable. The Liquidators, on behalf of each of the Fairfield Funds, have disputed any liability to the BLMIS Estate in connection with the Adversary Proceeding and the Avoiding Power Claims

300156021.7

alleged therein.

## FAIRFIELD FUNDS' CLAIMS
## AGAINST THE BLMIS ESTATE

10.     Prior to July 2, 2009, the bar date for filing claims in the BLMIS bankruptcy case, and prior to the appointment of the Liquidators, Fairfield Sentry filed three customer claims in the SIPA Proceeding (assigned claim numbers 008037, 007898 and 11251, later amended by claim numbers 011234 and 011429 (such claims, collectively, the "Sentry SIPA Claim") alleging aggregate losses from the Fairfield Sentry Accounts of Six Billion Two Hundred Eighty Four Million Three Hundred Twenty One Thousand Five Hundred Eighty One Dollars ($6,284,321,581) (the "Last Statement Amount"). The Sentry SIPA Claim, including the relevant BLMIS Account Numbers 1FN012, 1FN045, 1FN069, 1FN070, is included as Attachment B to the Agreement.

11.     The Trustee has disputed that Fairfield Sentry is entitled to allowance of a customer claim in the amount reflected on its November 30, 2008 BLMIS account statement. On March 1, 2010 this Court issued an opinion applying the Trustee's "net equity" calculation of customer claims as the difference between amounts deposited into BLMIS and amounts withdrawn (the "Net Equity Method"). Appeal of the March 1, 2010 order is currently pending before the Untied States Court of Appeals for the Second Circuit. According to the Trustee, the amount of the Sentry SIPA Claim based on the Net Equity Method is One Billion One Hundred Ninety Two Million Five Hundred Thirty Six Thousand Three Hundred Forty Two Dollars ($1,192,536,342) (the "Sentry SIPA Net Equity Claim").

12.     Prior to July 2, 2009, the bar date for filing claims in the BLMIS bankruptcy case, and prior to the appointment of the Liquidators, Fairfield Sigma filed four customer

7

claims in the SIPA Proceeding (assigned claim numbers 011250, 011744, 011240 and 011249) claiming aggregate losses of Seven Hundred Seventy Three Million Six Hundred Thirty Five Thousand One Hundred Eighty Eight Dollars ($773,635,188) (such claims, collectively, the "Sigma SIPA Claim"). On or about December 8, 2009, the Trustee issued a notice of denial of the Sigma SIPA Claim on the asserted basis that Sigma is not a customer of BLMIS within the meaning of 11 U.S.C. § 78*lll*(2) (the "Sigma Denial Notice"). On or about January 7, 2010, the Liquidators filed a timely objection to the Sigma Denial Notice in the SIPA Proceeding, and that objection remains pending. The Sigma SIPA Claim, the Sigma Denial Notice and the Liquidators' objection to the Sigma Denial Notice are included as Attachment C to this Agreement.

13.     Prior to July 2, 2009, the bar date for filing claims in the BLMIS bankruptcy case, and prior to the appointment of the Liquidators, Fairfield Lambda filed four customer claims in the SIPA Proceeding (assigned claim numbers 014661, 014761, 014762 and 014795) claiming aggregate losses of Thirty Six Million Six Hundred Seventy Six Thousand Two Hundred and Five Dollars ($36,676,205) (such claims, collectively, the "Lambda SIPA Claim" and, together with the Sentry SIPA Claim and the Sigma SIPA Claim, the "Fairfield SIPA Claims"). On or about December 8, 2009, the Trustee issued a notice of denial of the Lambda SIPA Claim on the asserted basis that Lambda is not a customer of BLMIS within the meaning of 11 U.S.C. § 78*lll*(2) (the "Lambda Denial Notice"). On or about January 7, 2010, the Liquidators filed a timely objection to the Lambda Denial Notice in the SIPA Proceeding, and that objection remains pending. The Lambda SIPA Claim, the Lambda Denial Notice and the Liquidators' objection to the Lambda Denial Notice are included as Attachment D to this Agreement.

300156021.7

14.     Pursuant to an Order entered on April 23, 2009, the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands (the "BVI Court") appointed Christopher Stride to be the Liquidator for Fairfield Lambda, which appointment commenced the winding up of Fairfield Lambda pursuant to the British Virgin Islands Insolvency Act 2003 (the "Lambda Proceeding").

15.     Pursuant to an Order entered on July 21, 2009, the BVI Court (i) permitted the commencement of the winding up of Fairfield Sentry in accordance with the British Virgin Islands Insolvency Act 2003 (the "Sentry Proceeding"), and (ii) appointed Kenneth Krys and Christopher Stride as the Joint Liquidators for Fairfield Sentry.

16.     Pursuant to an Order entered on July 21, 2009, the BVI Court (i) permitted the commencement of the winding up of Fairfield Sigma in accordance with the British Virgin Islands Insolvency Act 2003 (the "Sigma Proceeding" and, together with the Lambda Proceeding and the Sentry Proceeding, the "BVI Proceedings"), and (ii) appointed Kenneth Krys and Christopher Stride to be the Joint Liquidators for Fairfield Sigma.

17.     On July 22, 2009, in proceedings commenced by the Liquidators pursuant to Chapter 15 of the Bankruptcy Code (the "Chapter 15 Proceedings"), the Bankruptcy Court entered an order recognizing the BVI Proceedings as foreign main proceedings and granting related relief to the Liquidators.

18.     On or about September 6, 2010, the BVI Court issued notices acknowledging Christopher Stride's resignation and Joanna Lau's appointment as Joint Liquidator with Kenneth Krys of each of the Fairfield Funds.

300156021.7

## SETTLEMENT DISCUSSIONS AND TRUSTEE'S INVESTIGATION

19. During 2010 and 2011, the Liquidators, on behalf of each of the Fairfield Funds, engaged in good faith discussions with the Trustee aimed at resolving the Trustee's claims. While the Liquidators, on behalf of each of the Fairfield Funds, informed the Trustee they disputed they had any liability to the Trustee, the Liquidators, on behalf of each of the Fairfield Funds, nevertheless engaged in good faith negotiations with the Trustee that yielded the settlement set forth in the Agreement.

20. The Trustee has conducted a comprehensive investigation of the Fairfield Funds' direct and indirect investments through BLMIS, the Fairfield Sentry BLMIS Accounts, and the dealings between the Fairfield Funds and other BLMIS Feeder Funds, and BLMIS customers. The Liquidators and the Fairfield Funds have cooperated with the Trustee and facilitated the investigation by providing information the Trustee has requested. This investigation includes, but is not limited to: the review and analysis of both the Fairfield Funds' BLMIS-related transactional histories as reflected in the BLMIS account statements, correspondence and other records and documents available to the Trustee; interviews with third-party witnesses; meetings with the Liquidators and their counsel, on behalf of each of the Fairfield Funds; and a substantial review of third-party records and documents.

21. After a review of the relevant records and a thorough and deliberate consideration of the uncertainty and risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a business resolution in this matter rather than continue the litigation.

300156021.7

## OVERVIEW OF THE AGREEMENT

22.     The principal terms and conditions of the Agreement are generally as follows (as stated above, the form of Agreement is attached as Exhibit "A" and should be reviewed for a complete account of its terms):[4]

- The Trustee and the Liquidators agree they shall jointly request the Bankruptcy Court to: (i) enter a judgment against Fairfield Sentry in the amount of Three Billion Fifty Four Million Dollars ($3,054,000,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Sentry (the "Sentry Judgment"), (ii) enter a judgment against Fairfield Sigma in the amount of Seven Hundred Fifty Two Million Three Hundred Thousand Dollars ($752,300,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Sigma (the "Sigma Judgment") and (iii) enter a judgment against Fairfield Lambda in the amount of Fifty Two Million Nine Hundred Thousand Dollars ($52,900,000), representing the settled amount of the Trustee's Avoiding Power Claims against Fairfield Lambda (the "Lambda Judgment" and, together with the Sentry Judgment and the Sigma Judgment, the "Judgments").

- The Liquidators shall pay to the Trustee for the benefit of the Fund of Customer Property a total of Seventy Million Dollars ($70,000,000) (the "Settlement Payment"). On the Closing, the Liquidators shall pay to the Trustee the sum of Twenty Four Million Dollars ($24,000,000) by wire transfer. The Liquidators shall pay to the Trustee the balance of the Settlement Payment totaling Forty Six Million Dollars ($46,000,000) three (3) Business Days following the first to occur of: (a) the first date when Fairfield Sentry's account at Citco Bank Nederland N.V.-Dublin branch (the "Citco Account") is no longer subject to an order of attachment; (b) the sale by the Liquidators of any Allowed Claim as defined in the Agreement; or (c) the aggregate receipt by the Liquidators of funds belonging to Fairfield Sentry equal to Forty Six Million Dollars ($46,000,000) from any source, other than from recoveries shared between the Parties under the Agreement, after the Closing.

---

[4]     Terms not otherwise defined in this section shall have the meaning ascribed in the Agreement. In the event of any inconsistency between the summary of terms provided in this section and the terms of the Agreement, the Agreement shall prevail.

300156021.7

- The Fairfield Sentry Customer Claim will upon the receipt of the Settlement Payment be allowed in the final amount of Two Hundred Thirty Million Dollars ($230,000,000), which represents a mutually agreed reduction of the claim in the amount of Nine Hundred Sixty Two Million Five Hundred Thirty Six Thousand Four Hundred Thirty Two Dollars ($962,536,432).

- The Trustee shall prosecute all claims and causes of action he has asserted in the Adversary Proceeding against the Fairfield Funds' former investment managers, investment advisors, managing entities, directors, partners, and officers, including but not limited to Fairfield Greenwich Group, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Risk Services Limited, Fairfield Greenwich Limited, Fairfield International Managers, Inc., Walter M. Noel, Jr., Jeffrey Tucker, and all other individual persons named as defendants in the Adversary Proceeding (the "Adversary Proceeding Claims"). The Liquidators shall unconditionally and irrevocably assign to the Trustee any and all claims asserted by, or on behalf of, the Fairfield Funds against Fairfield Greenwich Group, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors, LLC, Fairfield Greenwich Limited, Fairfield Investment Mangers, Inc., Walter M. Noel, Jr., Jeffrey Tucker, Andres Piedrahita, Amit Vijayvergiya, Brain Francouer, Lourdes Barrenche, Cornelius Boele, Philip Toub, Richard Landsberger, Charles Murphy, Andrew Smith, Daniel Lipton, Mark McKeefry, Harold Greisman, Santiago Reyes, Jacqueline Harrary, Robert Blum, Corina Noel-Piedrahita and Maria Teresa Pulido Mendoza in the action entitled *Fairfield Sentry Limited v. Fairfield Greenwich Group, et al.,* currently pending in the Bankruptcy Court, Adv. Pro. No. 10-03800 (BRL) (the "Liquidators' New York Action"), including but not limited to the Fairfield Funds' claims for Breach of Fiduciary Duty, Breach of Contract, Unjust Enrichment, Constructive Trust, Rescission of Investment Manager Contract based on Mutual Mistake, and Accounting (the "Assigned Claims" and, together with the Adversary Proceeding Claims, the "Management Claims").

- The Trustee will release, acquit, and forever discharge each of the Fairfield Funds, the Liquidators, individually and in their capacities as Liquidators, and all of the Liquidators' agents, representatives, attorneys, employees and professionals on the specific terms set forth therein. The release becomes effective upon Trustee's actual receipt of the Settlement Payment at the Closing as defined in the Agreement without any further action by any of the Parties.

- The Trustee and the Liquidators agree to provide reasonable access to the other's documents, data, and other information relating to, or beneficial to the pursuit of, the Sharing Claims. The Trustee and the

300156021.7

Liquidators each agree to provide reasonable cooperation and assistance to the other Party in connection with the prosecution of the Sharing Claims, provide the other with a reasonable opportunity to consider the terms for resolving any Sharing Claims and confer in good faith regarding such terms.

- The Trustee and the Liquidators shall share recoveries under the Agreement for certain groups of additional claims already filed or to be filed, as set forth and defined by the Agreement as "Sharing Claims."

- The Releasees will release, acquit, and forever discharge the Trustee and all his agents on the specific terms set forth in the Agreement. The release becomes effective upon the Trustee's actual receipt of the Settlement Payment at the Closing as defined in the Agreement without any further action by any of the Parties.

- All agreements between Fairfield Sentry and BLMIS (other than the Settlement Agreement) will be terminated as of the date of the Settlement Payment.

- If the Bankruptcy Court and/or the BVI Court have not entered the order approving the Agreement by Three Hundred Sixty (360) days after the date of the Agreement, then, at the option of either the Trustee or the Liquidators and the Fairfield Funds and upon written notice to the other parties to the Agreement, the Agreement will terminate and be null and void.

The Agreement is subject to the approval of both this Court (on behalf of the BLMIS estate) and the BVI Court (on behalf of the Fairfield Funds' estates administered in the BVI Proceedings). A hearing before the BVI Court to consider approval of the Agreement will be scheduled soon. Any stakeholder of the Fairfield Funds seeking information regarding those proceedings should contact Charlotte Caulfield of the British Virgin Islands office of KRyS Global (phone: 1-284-494-9644; e-mail: charlotte.caulfield@krys-global.com) or William Hare of the British Virgin Islands office of Forbes Hare (phone: 1-284-494-1890; e-mail: william.hare@forbeshare.com), the Liquidators' general counsel.

23.     The agreed upon settlement, described below and set forth in the Agreement, resolves any and all claims the Trustee asserted in the Adversary Proceeding against the

300156021.7

Fairfield Funds, including, but not limited to, claims the Trustee had against the Fairfield Funds for direct and indirect transfers by BLMIS within the ninety days before the Filing Date and during the period more than ninety days, but within six years, before the Filing Date, and other claims the Trustee had against the Fairfield Funds. The Agreement provides for judgments for one hundred percent (100%) of the Trustee's Avoiding Power Claims against the Fairfield Funds. The Agreement will return Seventy Million Dollars ($70,000,000) from Fairfield Sentry's cash to the Fund of Customer Property for ultimate distribution to defrauded customers in accordance with SIPA, reduces Fairfield Sentry's claim before the Trustee by nearly $1 Billion, and provides a cooperative mechanism for the future recoveries to the Fund of Customer Property from proceedings, including but not limited to claims against Fairfield Sentry management entities and individuals, to be jointly pursued by the Trustee and the Liquidators.

## RELIEF REQUESTED

24.     By this Motion, the Trustee respectfully requests that the Court enter an order substantially in the form of the proposed Order annexed hereto as Exhibit "B" approving the Agreement.

## LEGAL BASIS

25.     Bankruptcy Rule 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Courts have held that in order to approve a settlement or compromise under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise proposed is fair and equitable, reasonable, and in the best interests of a debtor's estate. *In re Ionosphere Clubs, Inc.*, 156 BR 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citing *Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424

14

(1968)).

26.     The Second Circuit has stated that a bankruptcy court, in determining whether to approve a compromise, should not decide the numerous questions of law and fact raised by the compromise, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Liu v. Silverman (In re Liu)*, 1998 U.S. App. LEXIS 31698, at \*3 (2d Cir. Dec. 18, 1998) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Masonic Hall & Asylum Fund v. Official Comm. Of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at \*21-22 (S.D.N.Y. Nov. 16, 2006); *In re Ionosphere Clubs*, 156 B.R. at 426; *In re Purified Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

27.     In deciding whether a particular compromise falls within the "range of reasonableness," courts consider the following factors:

(i)     the probability of success in the litigation;

(ii)    the difficulties associated with collection;

(iii)   the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(iv)    the paramount interests of the creditors (or in this case, customers).

*In re Refco, Inc.*, 2006 U.S. Dist. LEXIS 85691 at \*22; *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993)).

28.     The bankruptcy court may credit and consider the opinions of the trustee or debtor and their counsel in determining whether a settlement is fair and equitable. *See In re Purified Down Prods.*, 150 B.R. at 522; *In re Drexel Burnham Lambert Group, Inc.*, 134

300156021.7

B.R. at 505. The competency and experience of counsel supporting the settlement may also be considered. *Nellis v. Shugrue*, 165 B.R. at 122. Finally, the court should be mindful of the principle that "the law favors compromise." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505 (quoting *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976)).

29.　　The Trustee believes that the settlement is fair and equitable and the terms of the Agreement fall well above the lowest point in the range of reasonableness. Accordingly, the Agreement should be approved by this Court. The Agreement memorializes a settlement that resolves all issues regarding the Trustee's claims asserted in the Adversary Proceeding against the Fairfield Funds without the need for protracted and costly litigation, the outcome of which is uncertain in light of the circumstances in this matter. As part of the Agreement, the Trustee on the one hand, and the Liquidators and the Fairfield Funds, on the other hand, have reached a good faith, complete, and total compromise as to any and all claims the Trustee asserted in a lawsuit for Three Billion Fifty Four Million Dollars ($3,054,000,000) against the Fairfield Funds for avoidable initial and recoverable initial and subsequent transfers by BLMIS during the ninety day, two year, and six year periods prior to the Filing Date, and other claims the Trustee had against the Fairfield Funds. (Affidavit of the Trustee in Support of the Motion (the "Picard Affidavit") ¶¶ 4-5. A true and accurate copy of the Picard Affidavit is attached hereto as Exhibit "C.")

30.　　While the Trustee believes that he would ultimately prevail in an action against the Fairfield Funds, he has determined, in an exercise of his business judgment, that litigation of the issues in a litigation against the Fairfield Funds would undoubtedly be extremely complex, create significant delay, and would involve both litigation risk and difficulties associated with collection. *Id.* ¶ 4.

300156021.7

31. The Liquidators, on behalf of each of the Fairfield Funds, have described a number of defenses and have contested the allegations that the Trustee asserted in a lawsuit against the Fairfield Funds, including, but not limited to, the Fairfield Sentry, Fairfield Sigma, and Fairfield Lambda. While the Trustee is confident of his factual and legal position, there is risk involved in complex litigation. The certain nature of the settlement also allows the Trustee to avoid the complications and defenses necessarily associated with attempting to collect a judgment from a variety of domestic and foreign entities.

32. As outlined above, the Agreement greatly furthers the interests of the customers of BLMIS by, among other things: (i) obtaining judgments in the amount of Three Billion Fifty Four Million Dollars ($3,054,000,000) against Fairfield Sentry, Seven Hundred Fifty Two Million Three Hundred Thousand Dollars ($752,300,000) against Fairfield Sigma, and Fifty Two Million Nine Hundred Thousand Dollars ($52,900,000) against Fairfield Lambda; (ii) adding Seventy Million Dollars to the Fund of Customer Property in the very near term, (iii) reducing the Fairfield Sentry Net Equity Claim from One Billion One Hundred Ninety Two Million Five Hundred Thirty Six Thousand Three Hundred Forty Two Dollars ($1,192,536,432) to an allowed SIPA Claim of Two Hundred Thirty Million Dollars ($230,000,000); and (iv) increasing the Trustee's ability to recover substantially greater sums for the Fund of Customer Property through cooperative efforts and marshalling of resources of the Trustee and the Liquidators. *Id.* ¶ 6.

33. Given the complexities involved in proceeding with litigation, including, but not limited to, multiple bankruptcy proceedings, collectability issues associated therewith, and the time value of money, the Trustee has determined that the proposed settlement with the Liquidators and the Fairfield Funds represents a fair compromise of the Avoiding Power

300156021.7

Claims. The Agreement allows the Trustee to avoid protracted litigation and resolves all of the defenses the Liquidators, on behalf of each of the Fairfield Funds, raised during good-faith negotiations with the Trustee. The ability to avoid the time and expense associated with continuing to litigate this matter, combined with the fact that the Agreement will result in a very substantial recovery, makes the settlement embodied by the Agreement extremely beneficial to BLMIS customers.

## CONCLUSION

34. In sum, the Trustee submits that the Agreement should be approved because it: (a) will avoid lengthy, burdensome, and expensive litigation; (b) represents a fair and reasonable compromise of the Avoiding Power Claims that greatly benefits the estate and the customers of BLMIS; and (c) is well within the "range of reasonableness" and confers a substantial benefit on the estate. For these reasons, the Trustee respectfully requests that the Court enter an Order approving the Agreement.

## NOTICE

35. In accordance with Bankruptcy Rules 2002 and 9019, notice of this Motion has been given to (i) SIPC; (ii) the SEC; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Forbes Hare, Palm Grove House, P.O. Box 4649, Tortola VG 1110, British Virgin Islands, Attn: William Hare; (v) KRyS Global, Clarence Thomas Building, Pasea Estate, Road Town, Tortola VG 1110, British Virgin Islands, Attn: Kenneth M. Krys and Joanna Lau; and (vi) Brown Rudnick LLP, Seven Times Square, New York, New York 10036, Attn: David J. Molton. The Trustee has also provide notice to all interested parties by email or regular U.S. mail.

300156021.7

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form of Exhibit "B" to the Motion granting the relief requested in the Motion.

Dated: New York, New York
       May 9, 2011

Respectfully submitted,

/s/ David J. Sheehan
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Mark A. Kornfeld
Email: mkornfeld@bakerlaw.com
Thomas L. Long
Email: tlong@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com
Keith R. Murphy
Email: kmurphy@bakerlaw.com
Jessie M. Gabriel
Email: jgabriel@bakerlaw.com
Melissa L. Kosack
Email: mkosack@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L.*
*Madoff*

2